MINIFIE (NEALE v.). See Case No. 10,070.

MINIFIE (UNITED STATES v.). See Case No. 15,782.

## Case No. 9,634.

### The MINNA.

[Blatchf. Pr. Cas. 333.] [2]

District Court, S. D. New York. March 26, 1863.

PRIZE—VIOLATING BLOCKADE—JUDICIAL NOTICE.

1. Vessel and cargo condemned for an attempt to violate the blockade.

2. The court will take judicial notice of the fact that the shipper at Nassau, a neutral port, of a cargo captured as prize, for an alleged attempt to violate the blockade, is a person who is shown by the records of the court to have been actively engaged in trading to and from the blockaded ports of the enemy.

In admiralty.

BETTS, District Judge. A libel was filed in this suit March 2, 1863. The warrant of attachment and the monition issued thereon were returned by the marshal as duly served, on the 24th of the same month. A default was ordered therein by the court, and the ship's papers, with the proofs in preparatorio, and the proceedings in the suit, were, on the same day, submitted to the court for adjudication. The libel alleges the capture of the vessel and cargo by the United States steamer Victoria, on the 18th of February last, at sea, near Beacon Inlet, off the coast of North Carolina, and that the vessel and cargo are subject to condemnation and forfeiture as prize of war, and sent to this port for adjudication for that cause. There was found on board of the vessel, when seized, a certificate of British registry of the vessel, at the port of Quebec, to Thomas Norris, of that place, as owner, bearing date October 10, 1853. There are frequent changes of the command of the vessel indorsed on the registry, down to the date of

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Samuel Blatchford, Esq.]

November 20, 1860. The vessel had on board a clearance from the port of Nassau, for New York, dated February 10, 1863; bills of lading and invoices of the cargo, principally salt, shipped by Adderly & Co., of the same date, shipment and destination; also a letter of advice of like date, from the shippers to Messrs. Thomas & Holmes, of New York. No other papers relating to the voyage were produced from the vessel. The master, the mate, the cook and one seaman were examined as witnesses in preparatorio, on the 2d and 3d days of March instant. The master says that he was put in command of the vessel and cargo at Nassau, by Adderly & Co., residing there; that she was captured about twenty miles southeast of Wilmington, N. C.; that the master and crew (nine in number) were hired at Nassau about the middle of February last; that the lading was salt, copperas and drugs; that the voyage was to commence at Nassau, and end at New York; that he knew of no other destination; that he knew that Wilmington had been blockaded; that when he left Nassau, he supposed it was in possession of the United States; that it was under blockade at the time the vessel was captured; and that when the vessel was arrested she was steering westerly, towards the land, the wind being northeasterly. The mate says the vessel was captured about five miles from land, which was in sight; that he told the master the vessel was near land, but she was kept standing in; that he knew of the war and the blockade of Wilmington, but does not know what information the captain had; that the course of the vessel was altered when the steamer was first discovered; that she then went about again, and stood inshore, and then the master and crew abandoned her; that the captain ordered the vessel to be headed to the shore before he took to the boat; that he (the witness) does not believe the captain was bound on an honest voyage to New York, but believes he intended to run the vessel ashore and go on shore himself; that the captain ordered the wheelman to steer her for the shore; and that he (the witness) believes that the captain intended to run the blockade on this voyage. The cook states that the capture was made between seven and eight o'clock a. m., about five miles off shore, between Wilmington and Cape Fear, and that he knew that the coast was under blockade at the time.

This testimony presents the case of an English vessel procured for the alleged voyage by a house at Nassau, N. P., which house has been notoriously engaged with great activity, since the blockade has been imposed on the coasts of the Carolinas, in trading to and from the enemy ports in that vicinity, in violation of the blockade. That fact has been established by floods of evidence, so that the court cannot avoid judicially noticing its existence, any more than it

can the proximity of that house and of its managers to the blockaded ports. The Apollon, 9 Wheat. [22 U. S.] 374; Peyroux v. Howard, 7 Pet. [32 U. S.] 342. They took the direction of this vessel, which had been previously registered in the province of Canada, and officered, manned, laded, and despatched her, without any documentary title to her or her service, and put her upon a voyage from Nassau to New York with a cargo brought from Canada to Nassau, passing by New York and specially adapted to the markets and wants of the rebels, and containing nothing which appears to be of any particular demand or attraction in the New York market. They furnished no evidence of the circumstances and necessity of the voyage performed. They ran the vessel and cargo directly from Nassau across to Wilmington and she was arrested heading in shore, between Cape Fear and Wilmington. No log-book or memorandum is found noting the course of the navigation or the cause of it. When pursued by the capturing vessel the master and crew of the prize abandoned her in a boat, and attempted to make the shore themselves and to have the vessel also run into the territory of the enemy. The mate testifies his belief that the vessel came on the coast with the intention of running the blockade. This is clearly the language and import of the whole transaction; and I am satisfied that the vessel was, when captured, navigated with the intention of violating the blockade, and is lawful prize of war. Decree accordingly.